**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILSON BAQUERO,<br><br>            Claimant,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | Civil Action No.: 2:14-cv-02442 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

## I.    INTRODUCTION

Before the Court is Claimant Wilson Baquero's appeal ("Claimant") seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act ("SSA"). For the reasons set forth below, this Court affirms the Commissioner's decision.

## II.    BACKGROUND

### A.    Procedural Background

On June 29, 2010, Claimant applied for DIB and SSI. (R. Pt. 2 at 15.) Both applications were denied initially and on reconsideration on September 30, 2010. (Id.) On May 8, 2012, a hearing was held before Administrative Law Judge ("ALJ") Marissa Ann Pizzuto. (Id.) On September 24, 2012, the ALJ concluded that Claimant was not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the SSA. (Id. at 21.) Claimant requested review of the decision and the Appeals Council denied the request on February 11, 2014. (Id. at 2.) On April 16, 2014, Claimant

instituted this action. (ECF No. 1.)

### B. Factual Background

Claimant was born on June 24, 1980. (Id. at 20.) Claimant graduated from high school in 1999. (R. Pt. 6 at 4.) Although he received a high school education, Claimant stated that he was required to take special education classes in high school because he was diagnosed with attention deficit disorder ("ADD"). (R. Pt. 2 at 31.) Claimant received counseling for his ADD but never took medication. (Id.)

After graduating, Claimant worked from 2000 to 2009, holding jobs as a cashier, day laborer, and construction roofer. (R. Pt. 6 at 4.) On December 5, 2009, Claimant was involved in a car accident where he suffered back injuries. (R. Pt. 2 at 28.) Claimant stated at the administrative hearing that he continued working as a roofer up until the day of the accident—December 5, 2009. (Id. at 37.) In his disability report, however, Claimant states that he stopped working as a roofer on September 1, 2009—prior to his accident—because he left the State of Florida to move back to the State of New Jersey. (R. Pt. 6 at 3.)

Since the accident, Claimant has received epidurals and physical therapy. (R. Pt. 7 at 47; Pt. 2 at 47.) At the administrative hearing Claimant stated he experiences muscle spasms in his back. (R. Pt. 2 at 35.) Claimant also stated he has trouble sleeping, breathing, and staying in one position for lengthy periods of time. (Id. at 35-38.) To reduce the pain, Claimant occasionally takes Tramadol. (Id. at 39.) Claimant stated that taking hot showers and receiving back massages also reduces his pain. (Id. at 47.)

Claimant alleges that he is unable to work because of back pain and a history of a learning disorder.

2

## III. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a claimant must show that he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of

3

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The SSA follows a five-step, sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the claimant has an impairment that limits his

ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation continues through each step unless it is determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n.2.

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

At step one, the ALJ found that Claimant met the insured status requirements of the SSA and has not engaged in substantial gainful work activity since the onset date of the alleged disability. (Id. at 17.) Although the Claimant has engaged in some work, the ALJ determined that this work did not rise to the level of "substantial gainful activity." (Id.) At steps two and three, the ALJ found that Claimant's impairments were "severe," but not severe enough to meet, either individually or in combination, any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (Id. at 17-18.) The ALJ determined that Claimant has status post motor vehicle accident injuries to the back and cervical spine, i.e., herniations and bulging, but that these injuries do not

5

rise to the level of meeting the spinal stenosis, nerve root, or spinal cord compression requirements of medical listing 1.04. (Id.) In addition, the ALJ determined that Claimant has a history of a learning disorder. (Id. at 17.)

The ALJ concluded that Claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). (Id. at 18.) To make this conclusion, the ALJ considered all symptoms and their consistency with the evidence.

Specifically, the ALJ considered the medical evidence which demonstrated that, Claimant had full range of motion and strength. (Id. at 19.) The ALJ noted that Claimant is able to walk without an assistive device and is able to walk on heels and toes. (Id.) The ALJ further explained that the Claimant's treating chiropractor's finding that the Claimant is unable to stand or walk for more than two hours a day or sit for more than six hours a day is uncorroborated by the record. (Id.)

Additionally, the ALJ considered a consultative psychological examination of Claimant which showed "'no indication of any psychiatric problems' and an unremarkable mental status other than some weakness in intellectual functioning and in attention and concentration." (Id.) Further, the ALJ noted, the record contains no evidence of psychiatric treatment or medication. (Id.)

At step four, the ALJ found that Claimant is unable to perform his past work as a construction roofer and laborer because, "[g]iven the exertional demands of this work," this job requires greater than a sedentary RFC. (Id.)

Finally, at step five, the ALJ considered Claimant's age, education, work experience, and RFC and concluded that Claimant has the ability to work in jobs that exist in significant numbers

in the national economy. (Id. at 20.) The ALJ emphasized that Claimant (1) was only 29 years old on the alleged disability onset date, which is defined as a younger individual; (2) has a high school education and is able to communicate in English; and (3) has work experience. (Id.) Thus, the ALJ concluded that Claimant is not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the SSA. (Id.)

**B.    Analysis**

Claimant makes the following arguments in support of his contention that the ALJ's decision should be reversed: (1) The ALJ failed to evaluate the credibility of Claimant's subjective complaints and, therefore, the ALJ's RFC determination was not supported by substantial evidence, and (2) The ALJ's step five finding that Claimant could perform other work existing in significant numbers in the national economy was not supported by substantial evidence. The Court will address each argument in turn.

### 1.    The ALJ's Evaluation of Claimant's Subjective Complaints

Claimant argues that the ALJ failed to consider his subjective complaints about the severity of his symptoms. (Cl. Br. at 15-20.) Specifically, Claimant asserts that the ALJ made only a single conclusory sentence about Claimant's subjective complaints and did not engage in a full pain evaluation. (Id. at 18-19.) Further, Claimant argues that the ALJ's evaluation of Claimant's subjective complaints was not supported by substantial evidence because "the decision does not mention a single word of plaintiff's testimony nor even a general taste of any of plaintiff's complaints." (Id. at 18.)

When determining a claimant's RFC, the ALJ must consider the claimant's subjective complaints and the extent to which such subjective symptoms can reasonably be accepted as

7

consistent with the objective medical and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(1). The ALJ "must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).

This Court finds that the ALJ's evaluation of the Claimant's subjective complaints was supported by substantial evidence. The ALJ considered the Claimant's testimony at the administrative hearing, but found that the description of the severity of Claimant's pain was not consistent with the medical evidence. (R. Pt. 2 at 18-19.) The medical evidence showed that "all extremities exhibited full range of motion and strength." (Id. at 19.) Indeed, Claimant stated that hot showers and back massages, along with medication, had been helpful in treating his pain. (Id. at 47.) Thus, the ALJ's determination that Claimant's pain was not so severe as to prevent him from doing sedentary work is supported by substantial evidence, even if it is not consistent with Claimant's testimony at the administrative hearing that he is not able to stand or walk for longer than two hours a day or sit for longer than six hours a day.

### 2. The ALJ's Step Five Finding

Claimant also argues that the ALJ erred at step five by relying on the Grids to determine that work existed in the national economy that he was able to perform. "[T]he grids cannot automatically establish that there are jobs in the national economy when a claimant has severe exertional and nonexertional impairments." Sykes v. Apfel, 228 F.3d 259, 267 (3d Cir. 2000). According to Claimant, his "history of learning disorder" presents severe nonexertional limitations and the ALJ's "decision uses a faulty RFC in order to utilize the grid rulings and avoid asking potentially result-changing hypothetical questions to a vocational expert." (R. Pt. 2 at 32.)

8

The ALJ determined that Claimant's history of a learning disorder did not put any limitations on his RFC for sedentary work. This Court finds that the ALJ's finding in this respect was supported by substantial evidence.

At the administrative hearing, the ALJ ordered Claimant to have a consultative psychiatric evaluation with I.Q. testing. (R. Pt. 2 at 32.) Thereafter, a consultative psychiatric evaluation was conducted by Ernesto L. Perdomo, Ph.D ("Dr. Perdomo"). (R. Pt. 7 at 133-136.) Claimant scored in the borderline range for intellectual functioning. (Id. at 135.) Dr. Perdomo stated, however, "there are no indications of any significant cognitive deficit or memory deficits." (Id.) He concluded by stating, "[e]ssentially, this is an individual with history of chronic back pain and herniated disk due to a car accident. There is no indication of any psychiatric problems." (Id.)

The ALJ's decision referenced and relied on Dr. Perdomo's evaluation of Claimant. In addition, the ALJ found that Dr. Perdomo's evaluation of Claimant was bolstered by the fact that Claimant has never received psychiatric treatment or taken medication for a mental disorder. (R. Pt. 2 at 19.)

Because the ALJ determined that Claimant's pain and history of a learning disorder did not put any limitations on his RFC for sedentary work and, as discussed above, that determination was supported by substantial evidence, the use of the Grids was proper.

## V. **CONCLUSION**

For the foregoing reasons, the Court will affirm the ALJ's decision. An appropriate order accompanies this Opinion.

DATED: September 30, 2015

                                                                       _____
                                                                        **CLAIRE C. CECCHI, U.S.D.J.**